[Civ. No. 6161. Fourth Dist. Feb. 17, 1960.]

HARLEY J. COOK, Appellant, v. CIVIL SERVICE COMMISSION OF THE CITY OF CHULA VISTA et al., Respondents.

James Edgar Hervey, Henry F. Walker, Robert G. Beverly and Thomas H. Ludlow, Jr., for Appellant.

Albert C. Boyer for Respondents.

COUGHLIN, J.—The petitioner brought these proceedings in mandamus to effect his reinstatement as a sergeant in the Police Department of the City of Chula Vista, from which position he had been discharged by his superior, the defendant chief of police. At the time of his dismissal he had attained regular status in the classified services of the city of Chula Vista, pursuant to the civil service system established by its charter.

On October 23, 1956, the chief of police demoted petitioner from sergeant to patrolman, contemporaneously delivering to him a written statement of the charges pertaining to his demotion. This statement related incidents occurring on October 3, 1956, when petitioner allegedly was absent from duty without authority, on business of a personal nature, outside the city; that he used a city vehicle in the course of this business; that upon return to the city he continued with business of a personal nature; and that such conduct indicated ''a flagrant disregard for the duties of his office.'' The incidents in question involved a demonstration, by petitioner to some officials of a neighboring city, of Chula Vista police equipment.

Upon receipt of the aforesaid statement, petitioner started a tirade, created a scene and called the chief of police a bastard. Thereupon, the chief of police orally dismissed petitioner from the police force. Prior to this occasion there had been others when petitioner had displayed ill feeling toward the chief. Petitioner demanded and on the following day, October 24, received a written statement of the charges upon which his dismissal was based. This statement contained two

charges; one was entitled "Incompetence," which alleged the incident occurring on October 3, 1956, involving the police equipment demonstration; the other was entitled "Insubordination," which alleged that "upon being corrected . . . for various infractions and use of poor judgment" petitioner had made threats against the administrative officer and, before witnesses, had shown "complete disrespect for the commanding officer of the Police Department," and which stated that "further evidence of this charge is contained within the efficiency and progress reports rated by his immediate superior officer and are in the civil service files."

On October 31, 1956, petitioner, in writing, objected to the foregoing statement upon the ground that "charge 2" therein did not comply with section 5, rule VIII of the civil service commission rules which provide: "Specific charges must be set forth clearly and with such particularity as will enable the employee to understand and answer them"; and "demanded that the particular acts, omissions or conduct claimed to constitute said charge be set forth with such clarity and particularity as would enable petitioner to understand and make answers to them, and that such specific charges be furnished to petitioner forthwith."

On November 2, 1956, a written amended statement of charges concerning petitioner's dismissal was served upon him. This statement contained three charges. The first was entitled "Incompetence," containing the same information set forth in the prior statement under the same title. The second was entitled "Insubordination," and related an incident which occurred on August 28, 1956, when the chief of police asked petitioner what the latter meant when he told fellow officers that he was happier than he had been in two years because the chief of police would not be here much longer; that petitioner replied "I don't have to explain anything to you. You have been riding me ever since you came here—now you're on your way out and I haven't anything to do with it, I am clean. They have enough on you to run you out of town." Whereupon petitioner was asked who "they" were and he refused to state, saying, "I don't have to tell you anything. I'm staying out of it. You'll find out." The third charge was entitled "Misconduct," and alleged that on August 28, 1956, petitioner used violent and obscene language to the chief of police, which was heard by other members of the department; that, on this occasion, petitioner said, in substance: ". . . I'm ready to go to the Civil Service Commission or the Council

with you and believe me I'm loaded. They've got enough on you to get you run out of town and even put you in the penitentiary, bub. You're a damned liar, and you know it. I've got a complete record of your deals in Minot and Minnesota.'' Other parts of this statement consisting of profane derogatory descriptions of the chief of police and his conduct, have been omitted from this opinion because of the foul language used.

The charter of Chula Vista provides that ''Every officer or employee who has attained regular status in the Classified Services shall retain his office or employment . . . during good behavior. The appointing authority, however, shall have power to . . . remove any such officer or employee from his position for misconduct, incompetence . . . (or) insubordination . . . but subject to the right of such officer or employee to a hearing before the Civil Service Commission in the manner set forth in this section.'' (Stats. 1949 [Extra Session], ch. 9, art. VIII, p. 136.)

A hearing was conducted before the civil service commission based upon the three charges set forth in the amended statement. The hearing occupied eight separate meetings, commencing November 26, 1956 and concluding December 13, 1956. Petitioner was represented by counsel at all times. He called witnesses to testify on his behalf. The representation of counsel for defendants, that of the 29 witnesses who testified before the commission 23 were called by petitioner, has not been disputed. Thereafter, briefs on behalf of all parties were filed.

The charter also provides that the commission shall make written findings, and shall set forth in writing its conclusions and recommendations based upon such findings within 10 days after concluding the hearings. (Stats. 1949 [Extra Session], ch. 9, art. VIII, § 807, p. 137.) On January 4, 1957, the commission caused copies of its findings, conclusions and recommendations to be served on all parties. In the findings it was stated that ''. . . all charges filed by the Chief of Police E. B. Roberts against the accused are true and have been sustained by the evidence excepting that this commission finds that the accused is not guilty of the charge of leaving the City of Chula Vista without authorization while on active duty serving as a commanding officer of the Chula Vista Police Department.'' From these findings the commission made the following conclusions and decision: ''That Sergeant Harley J. Cook be removed from the Classified Services of the

City of Chula Vista and removed and dismissed as a member of the Chula Vista Police Department, effective as of November 2, 1956.''

At all times the petitioner has admitted the truth of the allegations contained in charge Number 2 entitled ''Insubordination,'' and the allegations contained in charge Number 3 entitled ''Misconduct.''

On January 25, 1957, petitioner filed his amended petition for a writ of mandamus in the trial court, asking that the defendants be directed to reinstate him in his position as a sergeant of the police department. Thereafter, an amendment to the amended petition, a supplement to the amended petition and a further amendment to the amended petition, together with answers thereto, were filed. During the course of these proceedings, pursuant to directions from a judge of the trial court other than the judge from whose judgment this appeal was taken, further hearings were held before the Civil Service Commission and orders made by it; these directions were based on purported orders made after hearings before the judge in question, but which that judge declared to be void in an order declaring all former hearings before him constituted a mistrial. On November 6, 1957 petitioner filed a petition for writ of mandate in this court—*Cook* v. *City of Chula Vista et al.*, 4 Civ. No. 5855—seeking further relief in this respect, and presenting many of the points which are presented on this appeal. This petition was denied on December 9, 1957. Subsequently, the matter came on for hearing before the judge from whose judgment this appeal is taken. Without objection from any party, under circumstances amounting to a stipulation, after a full and comprehensive argument arising out of motions by both parties for judgment on the pleadings and on the opening statement of counsel, the case was submitted for decision upon the aforesaid opening statements, upon the pleadings heretofore noted, and upon evidence admitted by stipulation. Thereafter, the trial judge rendered a written opinion giving detailed consideration to the issues involved and announcing his conclusion to find in favor of the defendants. Findings of fact, conclusions of law and a judgment followed accordingly. Petitioner moved for a new trial which was denied. The order of denial was accompanied by a written decision giving further detailed consideration to additional points and authorities not adequately presented for consideration prior to judgment. The petitioner brings this appeal.

As indicated, under the Chula Vista charter an appointing officer may order dismissal of a civil service employee for incompetence, misconduct or insubordination. Such order is effective at the time indicated by the officer, unless an appeal therefrom is taken to the civil service commission. In the event of an appeal, a temporary vacancy is created by the order. If the charges against the employee are not proved at the hearing before the commission, and it recommends ''reinstatement,'' the discharged employee must be ''reinstated.'' (Stats. 1949 [Extra Session], ch. 9, pp. 136, 137.) The charter makes no provision respecting the action of the appointing authority in those instances where the commission finds the charges against the employee to be true, or does not recommend reinstatement even though it finds the charges to be untrue, except to provide that the decision of such officer with respect to any recommendation of the commission, other than the aforesaid recommendation of reinstatement, shall be final and conclusive.

Petitioner urges a great number of grounds for reversal of the judgment. Most of these are based on alleged procedural defects which he claims are jurisdictional in nature and require his reinstatement.

In this regard he relies on a rule of strict construction and strict compliance with applicable charter provisions citing, in support of this position, such cases as *Wiles* v. *State Personnel Board,* 19 Cal.2d 344, 351 [121 P.2d 673]; *Livingstone* v. *MacGillivray,* 1 Cal.2d 546 [36 P.2d 622]; *Shannon* v. *City of Los Angeles,* 205 Cal. 366 [270 P. 682]; *Baumgardner* v. *City of Hawthorne,* 104 Cal.App.2d 512 [231 P.2d 864]; *Ahlstedt* v. *Board of Education,* 79 Cal.App.2d 845 [180 P.2d 949]; *Brown* v. *State Personnel Board,* 43 Cal.App.2d 70 [110 P.2d 497]; *Kelly* v. *State Personnel Board,* 31 Cal.App.2d 443 [88 P.2d 264] and *Nilsson* v. *State Personnel Board,* 25 Cal.App. 2d 699 [78 P.2d 467]. Particular stress is laid upon language used therein which supports the rule advanced. However, the effect of a general rule, and the authority of broad language used in an opinion must be considered in context with the facts under consideration. In several of the cases cited there was no notice and no hearing. Those involving a time element considered the effect of a failure to act pursuant to authority existing only during a specified time as distinguished from the effect of a failure to follow a directive to act within such a time. Respondents contend that the cited cases consider matters which go to the essence of the proceeding under considera-

tion, i.e., of the particular object sought to be accomplished, as distinguished from those which are procedural, regulatory, and for convenience sake, citing *Crane* v. *Board of Supervisors,* 17 Cal.App.2d 360, 367-368 [62 P.2d 189], and *Meyer* v. *Board of Public Works,* 51 Cal.App.2d 456, 465 [125 P.2d 50]. ■■■ The Chula Vista charter guarantees a discharged employee a right to appeal to the civil service commission. Its provisions should be strictly construed and enforced to effect such hearing. This being achieved irregularities in the proceedings are not jurisdictional. (*Boyd* v. *Pendegast,* 57 Cal. App. 504 [207 P. 713] ; *Kidd* v. *State Civil Service Com.,* 13 Cal.App.2d 653 [57 P.2d 569] ; *DeWitt* v. *Board of Supervisors,* 53 Cal.2d 419, 425 [2 Cal.Rptr. 1, 348 P.2d 567].)

■■■ Section 807 of article VIII of the charter provides that an employee who has been removed by the appointing authority ''shall be entitled to receive upon his request at the office of the Board or officer taking such action, not later than the second business day thereafter, a written statement in which shall be separately stated each of the charges against him upon which such . . . removal is based.'' (Stats. 1949 [Extra Session], ch. 9, p. 137.) Civil service rules requiring these charges be set forth clearly and with particularity supplemented this provision. Petitioner contends that his discharge on October 23, 1956, was based on three charges, viz., incompetence, insubordination and misconduct; that on this date he demanded that he be furnished with a written statement of the charges made against him; that this statement was not given to him until November 2, 1956; that the statement given him on October 24, 1956, was incomplete, contained only the grounds of incompetence and insubordination, and did not constitute a statement of the charges upon which his removal was based; that the charge of insubordination in the statement of October 24, 1956, was too general in nature to comply with the charter and rules; that the charge of misconduct was first set forth in the statement of November 2, 1956, was not a part of the former charge of insubordination, and consequently, was not filed within the required two-day period after requested; and that the failure to comply with the charter constituted a jurisdictional defect.

The October 24th statement of charges was served within the time specified by the charter. Petitioner requested that the charges be made more specific. In response to this request, and within two days thereafter, the November 2d statement was delivered to him. The fact that the October 24th statement

described the charges against petitioner in language broad in scope is of no consequence in view of the November 2d statement, furnished petitioner at his request, which contained the charges upon which he had a hearing and which were sufficiently specific to enable him to "identify the transaction, understand the nature of the alleged offense, and prepare and present his defense." (*Hostetter* v. *Alderson,* 38 Cal.2d 499, 502 [241 P.2d 230] ; *Gipner* v. *State Civil Service Com.,* 13 Cal.App.2d 100, 107 [56 P.2d 535].) Petitioner admitted that the charges made against him in the amendment were true. There is no contention that his defense was hampered in any way by the alleged procedural defects of which he complains. The propriety of amending a statement of charges against a civil service employee in proceedings involving a removal has been recognized. (*Nichols* v. *Sunderland,* 77 Cal.App. 627, 637 [247 P. 614].) "When the amendment amplifies but does not change the cause of action the amended pleading relates back to the date when the original pleading was filed. . . . If a new cause of action is introduced by the amendment such new cause of action relates back to the date of filing the amendment." (*Nichols* v. *Sunderland,* 77 Cal.App. 627, 637 [247 P. 614].) In the case at bar the commission recommended that petitioner's employment be terminated as of November 2, 1956, the date when he was served with the statement of charges forming the basis of his hearing.

█ Although the charge contained in the statement of October 24th was set forth in general terms, it was sufficient to advise petitioner that he was dismissed because he had made threats against and had shown disrespect to the chief of police. The fact that this conduct was labeled "insubordination" on one occasion and "insubordination" and "misconduct" on another occasion does not change or alter the original charge. The November 2d statement set forth specific facts properly embraced within the former general allegations. It was that type of amendment which ordinarily follows the sustaining of a demurrer to a complaint upon the ground of uncertainty.

█ Furthermore, the charter expressly indicates that a hearing may be held before the commission without the presentation of any written charge in that it provides: "In his answer, or otherwise, *if no statement of charges has been made available to him as required,* such employee may request a hearing by the Civil Service Commission to review such . . . removal which shall be called and held as provided in the rules

and regulations." (Stats. 1949 [Extra Session], ch. 9, p. 137.) (Italics by this court.) In effect, the charter imposes upon an appointing officer the duty to furnish a discharged employee with a statement of the charges upon which his removal is based. Compliance with this duty may be enforced. However, any failure to comply is not jurisdictional to a hearing before the commission, and, as a consequence, is not jurisdictional to the proceeding which may terminate in the employee's dismissal.

Petitioner also claims that the commission was required to certify its findings, conclusions and recommendations to the appointing authority within 10 days after concluding the hearing; that it failed to do so; and that this failure deprived it of further jurisdiction and voided its subsequent action. The charter provides that the commission "shall make written findings which shall state as to each charge whether or not such charge is sustained," and "shall also set forth in writing its conclusions and recommendations based upon such findings and within 10 days after concluding the hearing. It shall certify its findings, conclusions and recommendations to the board or officer from whose action the appeal was taken . . ." (Stats. 1949 [Extra Session], ch. 9, p. 137.) The commission set forth its findings, conclusions and recommendations in a writing dated January 4, 1957, which recited that, "Pursuant to stipulation of all parties this hearing was commenced on November 26, 1956, and the trial continued regularly from time to time thereafter by stipulation, being concluded on December 13, 1956.

"Upon conclusion of the evidence and testimony the cause was by stipulation of all parties to stand submitted for decision after the filing of briefs by the accused and the Chief of Police."

Petitioner claims that the hearing was concluded on December 13, 1956, and that 22 days transpired before the commission made its certification. However, it is obvious that although the trial or the taking of testimony was concluded on December 13, 1956, the "hearing," by stipulation of the parties, was continued until briefs had been filed and the matter was submitted for decision. The arguments of both petitioner and the respondent, set forth in briefs, were a part of the "hearing." The date of submission is not indicated in the record and petitioner has failed to establish the alleged delay of which he complains.

Moreover, any failure to file the document in question within the time prescribed was not jurisdictional. Petitioner argues: The charter states that, as used therein, " 'shall' is mandatory and 'may' is permissive"; (Stats. 1949 [Extra Session], ch. 9, p. 149) § 807 thereof provides that the commission "shall" set forth its conclusions and recommendations within 10 days after concluding the hearing; therefore, a failure to act within the 10-day period would deprive it of jurisdiction to make a decision. In support of this argument *Wiles* v. *State Personnel Board*, 19 Cal.2d 344 [121 P.2d 673] is cited. This case involves the validity of a dismissal which was proper if made during the employee's probationary period but improper if made after he attained regular status; the order, as made, was not to be effective until the probationary period had expired; the court held that the attempted dismissal was ineffective. Such a situation is entirely different from the one in the case at bar. Cases more comparable to the one at hand justify the conclusion that the time requirement in question was not jurisdictional. In *Crane* v. *Board of Supervisors*, 17 Cal.App.2d 360 [62 P.2d 189], the failure of a superintendent of schools to file a recommendation respecting a petition to change the boundaries of a school district, under the provision of law which stated that the superintendent "must" make such a recommendation, was held not to be jurisdictional. The court stated that (p. 367) ". . . unless the act or action properly may be regarded as 'of the essence' of the particular object sought to be obtained, or the purpose to be accomplished, the required act or action will be deemed directory only.

"As inclusive abstract illustrations of the meaning of such a declaration, the authorities indicate that the specified act should be regarded as directory if it is immaterial in that its consequence amounts merely to a matter of form, possible convenience, or to expeditious or orderly 'conduct of business,' —and especially so when a failure of performance of such act will result in no injury or prejudice to the substantial rights of interested persons." The time element under consideration in the case at bar, cannot be considered to be "of the essence" of the object sought to be obtained by the proceedings in question. In *Garrison* v. *Rourke*, 32 Cal.2d 430 [196 P.2d 884], it was held that a failure of the trial court to comply with the requirement of the election code, respecting an election contest, that such court "shall" continue in special

session and "shall" file its findings and conclusions and judgment within 10 days after submission, did not divest that court of jurisdiction. It was there noted that the "intent to divest the court of jurisdiction by time requirements is not read into the statute unless that result is expressly provided or otherwise clearly intended" and that the correct rule is as follows: "A time limitation for the court's action in a matter subject to its determination is not mandatory (regardless of the mandatory nature of the language), unless a consequence or penalty is provided for failure to do the act within the time commanded." (*Garrison* v. *Rourke,* 32 Cal.2d 430, 435-436 [196 P.2d 884].) In *Farmers etc. Nat. Bank* v. *Peterson,* 5 Cal.2d 601 [55 P.2d 867] the court rejected a contention that a judgment not filed within 30 days, as required by section 632(1) of the Code of Civil Procedure was void, stating (p. 607) "The provisions of that section have been held to be directory merely and not jurisdictional." (See also *DeWitt* v. *Board of Supervisors,* 53 Cal.2d 419, 425 [2 Cal.Rptr. 1, 348 P.2d 567].)

Petitioner further contends that he never was discharged by the chief of police as required by the charter. He claims that the commission attempted to discharge him and that the chief of police took no positive action respecting his dismissal after receipt of its determination. As heretofore noted, the commission was required to make written findings, conclusions and recommendations. In doing so it stated: "From the foregoing findings of fact, the commission makes the following conclusions and decision: . . . that Sergeant Harley J. Cook be removed from the Classified Services of the City of Chula Vista and removed and dismissed as a member of the Chula Vista Police Department effective as of November 2, 1956." Because the commission used the word "decision" instead of "recommendation" it is contended that it attempted to discharge petitioner and that such action was without its jurisdiction. Regardless of the language used, a fair reading of the document in question indicates an intention to comply with the obligation imposed by the charter, and to make a recommendation that petitioner "be removed . . . effective as of November 2, 1956." The chief of police already had removed petitioner from service; this action was subject to appeal; the appeal having been determined against petitioner no further action was necessary to effect his removal. Contrariwise, if his appeal had been successful and the commission wished to void his removal under the charter it would

have been required to recommend "reinstatement," and the appointing officer thereupon would have been obliged "to order such reinstatement." In substance a reinstatement vacates a prior order for dismissal and restores a discharged employee to his former status. This would require positive action. Likewise, should the appointing officer wish to change his former order in any particular, he would have to take positive action. On the other hand, no positive action is necessary where the order of dismissal has been affirmed on appeal. In the instant case there can be no doubt that the chief of police effectively discharged petitioner. Moreover the action of petitioner in bringing these proceedings, requesting that the chief of police be ordered to "reinstate" him, and the former's contest thereof, are sufficient proof of positive action of dismissal by the appointing authority.

As a further ground of invalidity of the dismissal proceedings, petitioner contends that the charter requires the commission, in every instance, to determine whether the charges made against an accused employee were motivated by personal, racial, religious or political prejudice and that it failed to make such a determination in this case. In fact, the charter provides: "*If*, with respect to a . . . removal, the Civil Service Commission shall conclude that the charges on which such action was based were not proved, or, although proved, were motivated by personal, racial, religious or political prejudice, a recommendation by it of reinstatement without loss of pay shall be binding upon the board or officer having appointive power . . ." (Stats. 1949 [Extra Session], ch. 9, p. 137). (Emphasis added.) Contrary to the contention of petitioner, the charter does not require the commission to determine, in each instance, whether the charges were motivated by prejudice but, instead, confers on the commission authority to make a recommendation of reinstatement without loss of pay which shall be binding upon the appointing power, "if" it concludes that the charges were motivated by prejudice. Moreover, as indicated in the written opinion of the trial court, the charter provisions in question require a finding with respect to prejudice only where prejudice exists; and the absence of any express finding upon this matter, under the circumstances, constitutes an implied finding that the charges against petitioner were not motivated by prejudice.

Further, it is contended that the commission acted in violation of law when, upon finding a part of the charges to be untrue, viz., those involving alleged incompetence, it

did not refer the matter to the chief of police for a redetermination of penalty. The record presents a serious question whether, as contended, the commission found all of the allegations of incompetence to be untrue. However, assuming the fact to be as contended, the rule urged by petitioner is not applicable to the case at bar. He relies on such cases as *Bonham* v. *McConnell*, 45 Cal.2d 304 [288 P.2d 502] ; *Cooper* v. *State Board of Medical Examiners*, 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593] ; *Bernstein* v. *Alameda etc. Medical Assn.*, 139 Cal.App.2d 241 [293 P.2d 862], and *Mast* v. *State Board of Optometry*, 139 Cal.App.2d 78 [293 P.2d 148], involving a judicial review of the decision of an administrative agency, resulting in a determination that some of its findings were not supported as a matter of law, and holding that the proceeding should be returned to the agency for further consideration in order that it might exercise its discretion in the light of legally established facts. These cases do not control the decision at hand. They do not present analogous situations. None of them considers an appeal to a civil service commission governed by a charter prescribing its duties. The Chula Vista charter requires the commission to ''make written findings'' and also to ''set forth in writing its conclusions and recommendations based on such findings and . . . certify its findings, conclusions and recommendations to the board or officer from whose action the appeal is taken . . .'' (Stats. 1949 [Extra Session], ch. 9, p. 137). In the case at bar, the commission recommended that the accused be discharged and dismissed. It made this recommendation in the light of its findings that the charges against the accused were true in part and untrue in part. These findings and recommendation were certified to the chief of police and the record indicates that a copy of the document containing them was served upon him. As heretofore noted, the record does not disclose whether he took any positive action with respect thereto, or relied upon his former order of dismissal to effect petitioner's removal. Under the charter he was not required to follow the recommendation of the commission. If he was inactive his inactivity indicated approval. The trial court in the proceeding at bar found accordingly. Under any circumstances, the contention is wholly without merit because no prejudice appears from the procedure followed. In his argument before the trial court, counsel for petitioner admitted that the chief of police not only acquiesced secretly and mentally in the decision made by the commission, but no

doubt was greatly pleased with it. It is apparent that petitioner would have been discharged by the chief of police had the commission recommended a reconsideration of the penalty in the light of its findings. By way of explanation, it is proper to observe at this juncture that the judge of the trial court who purportedly had made orders, which he thereafter set aside, remanding the matter to the commission for further consideration, directed it to reconsider the penalty and findings upon the issue of prejudice. Pursuant thereto, in every instance, the commission made a further order; one affirming the penalty theretofore recommended; and the other finding that no prejudice motivated the dismissal.

 Another claim of invalidity arises out of petitioner's contention that he was discharged for reasons other than those set forth in the statement of charges served upon him. The basis for this contention comes from the answers of the chief of police to questions put to him by petitioner's counsel during the civil service hearing. Under intensive cross-examination the chief of police, after stating "All right, have it your way," testified in substance, that the thing that brought about petitioner's dismissal was the way he acted in the chief's office on the night of October 23d. It was on this occasion that the petitioner went into a tirade; created a scene; and called the chief a bastard. Theretofore, the chief had testified that the events of October 23d were not "altogether" the reason for the dismissal; but "the end reason"; that there was a "combination of two or three things." It is evident that the conduct of petitioner on the night of October 23d activated his dismissal but the basis therefor was his misconduct over a period of time. In compliance with the charter, the incidents related in the statement furnished petitioner were the charges selected upon which to base his dismissal. It was not necessary to set forth all of the reasons which might have justified his discharge. (*Meyer* v. *Board of Public Works*, 51 Cal.App.2d 456, 465 [125 P.2d 50].) The record does not disclose that the commission considered evidence of charges other than those set forth in the statement. Its findings are limited to the issues raised by the statement. Its conclusions and recommendation expressly were based upon these findings.

 Finally, petitioner argues that the facts stated in charge No. 2 did not constitute insubordination. The trial court found that "the occurrences related in charge 2 bear sufficient relation to petitioner's duty and conduct as a police officer and to the proper administration of the Police Depart-

ment of the City of Chula Vista to be the basis for a charge of insubordination.'' We concur in this finding. Moreover, it is apparent that the incident related in charge 2, under the title of ''insubordination'' and the incident related in charge 3 under the title of ''misconduct,'' occurring on the same day, constituted parts of a general course of conduct. Whether one sentence uttered, or one offensive act committed, segregated and by itself, constitutes insubordination or misconduct is of no consequence if the charges as a whole constitute a course of conduct amounting to insubordination or misconduct. The appointing officer and the civil service commission were entitled to conclude that the attitude of petitioner toward the chief of police, his evident animosity, and his bitter, discourteous, abusive, disloyal, threatening and profane expressions of ill will were such as to make his continued employment detrimental to the city; that his conduct constituted a rebellious challenge to the authority of his superior officer which, if tolerated, could have been nothing but devastating; and that the natural consequence of such a state of affairs would be a deterioration of the morale of the department, disruption of harmony and resultant inefficiency of the police force. These factors legally justified petitioner's dismissal for insubordination and misconduct.

On this appeal petitioner has argued again the matters presented to the trial court. In the main, these concern alleged irregularities in the procedure which were not prejudicial to his hearing. Nevertheless the earnestness of his presentation has caused us to give them extensive consideration. They are without merit. Petitioner was given a full and fair hearing before the commission. Due process of law was offered him in every respect. He was given a statement of the charges against him; these were made more specific upon his demand. He was represented by counsel. He called witnesses who testified on his behalf. The case was fully argued. The commission's adverse decision was judicially reviewed by the trial court through these proceedings. Its conclusion was proper. The judgment is affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied March 7, 1960, and appellant's petition for a hearing by the Supreme Court was denied April 13, 1960.